IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANTE JACKSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-2225 |
| | : | |
| CORRECTIONAL OFFICER | : | |
| "WEBSTER," *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

JONES, J.                                                                                                                                                                                         JULY 31, 2018

      Plaintiff Dante Jackson, a prisoner currently incarcerated at SCI-Houtzdale, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against Correctional Officer Webster and a John Doe Correctional Officer based on the loss of his property.[1] He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Jackson leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim.

### I.    FACTS

      The events giving rise to Jackson's claims occurred in May of 2018, during his admission to SCI-Graterford. Jackson alleges that, upon arrival with approximately six other inmates, his personal property was taken and searched outside his presence. Some of his personal and legal mail was "mix[ed] in" with other inmates' property, "which all the prisoners gave back to each other." (Compl. ECF No. 2 at 2.)[2] Jackson alleges that "all of [his] 'uniform commercial code'

---

[1] Jackson only identified Correctional Officer Webster as a Defendant in the caption in accordance with Federal Rule of Civil Procedure 10. However, in the body of the Complaint, Jackson identifies Webster and a John Doe correctional officer as Defendants.

[2] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

1

paper was missing, along with [his] personal contact information to family and friends." (*Id.*)
Jackson was informed, however, that his papers would be returned with the exception of his
UCC material.

Jackson was also strip-searched in an area where a "bunch of inmates and officers were
walking past" and his clothing was taken from him. (*Id.*) Jackson alleges that the clothing was
expensive and that he was informed he would be able to send the items home.

After being strip-searched, Jackson was ushered into a room where he encountered
Correctional Officer John Doe and Correctional Officer Webster, who was inventorying his
property. Webster informed Jackson that he would either destroy the property or send it home
and that Jackson had to pick an option and "make it quick." (*Id.*) Jackson informed Webster that
his UCC material and "personal-contact information" was "confiscated," but Webster stated that
it was not his problem and that he was not going through Jackson's papers. (*Id.* at 3.)

Jackson asked to look at his papers, but Webster only allowed him to look at certain items
and again told Jackson he could either send them home or they would be destroyed. Jackson,
however, wanted the facility to hold his property, believing that was an option based on the
property inventory sheet that Webster presented to him. Jackson asked to speak to a supervisor,
but his request was rejected. He then wrote "no consent" on the property inventory form
provided to him by Webster.

Jackson was then taken to a room where he "went through his papers thoroughly and came
upon [a] 'motion' paper, which held an address on there." (*Id.*) Jackson informed Correctional
Officer Johnson that he now had an address where he could send his property. Officer Johnson
informed Officers Webster and Doe, but they responded that Jackson's property had already
been placed in the "trash." (*Id.*) Officer Johnson told Jackson that he was not going to argue

with the other officers, but that Jackson's property "was still there" and that he could file a grievance. (*Id.* at 4.) Jackson alleges that he found his property and informed Officer Doe of that fact, but that Officer Doe nevertheless insisted that Jackson's property had been thrown away.

Jackson filed two grievances—"one for [his] 'property' and another for [his] personal information and address." (*Id.*) A week later, he "was provided with [his] personal information that was not 'U.C.C. material.'" (*Id.*) The matter of his clothing, however, was apparently not resolved. Jackson alleges that "[d]ue to Defendants['] 'deliberate indifference' and 'intentional indifference' [to] [his] rights, [he] was unable to send 'property' home," causing him to be "deprive[d] of expensive clothing property." (*Id.*) He also claims that other prisoners who were "similarly situated" were permitted to send their clothing home. (*Id.*) The Court understands Jackson to be pursuing claims pursuant to 42 U.S.C. § 1983, for violation of his Fourth Amendment rights, as well as his right to due process and equal protection of the law. He seeks compensatory damages in the amount of $1,500 against each Defendant, and punitive damages in the amount of $1,500 against each Defendant.

## II.     STANDARD OF REVIEW

The Court grants Jackson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

---

[3] However, as Jackson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Jackson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To the extent Jackson is alleging that Correctional Officers Webster and Doe intentionally deprived him of his property, there is no basis for a due process claim because the prison grievance system and Pennsylvania law provide Jackson with adequate state remedies. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy).

Jackson also has not stated a claim under the Fourth Amendment. The Court understands Jackson to be challenging the reasonableness of Officers Webster and Doe's search of his property. However, "prisoners have no legitimate expectation of privacy and . . . the

Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson*, 468 U.S. at 530. In any event, "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012). Nothing in the Complaint suggests that the search of Jackson's property prior to his admission to SCI-Graterford was unreasonable under the circumstances.

If Jackson is challenging the fact that he was strip-searched upon entry to SCI-Graterford, his claims fail because he has not alleged how Officers Webster and Doe were personally involved in that search. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (noting that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable" (quotations omitted)). Rather, the Complaint states that Jackson encountered the Defendants after he was strip-searched. In any event, the Supreme Court has held that it is reasonable for jail officials to strip-search inmates before admitting them into the jail's population "to detect and deter the possession of contraband in their facilities." *Florence*, 566 U.S. at 328. In light of that ruling, it is not apparent from the Complaint how Jackson's strip-search could be considered unconstitutional.

Turning to Jackson's equal protection claim, he alleges that other prisoners who were "similarly situated" were permitted to send their clothing home. (Compl. at 4.) To state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Here, although Jackson claims he was treated differently from similarly situated inmates, his one-line allegation is conclusory and undeveloped. Although Jackson is not

required to "identify in the complaint specific instances where others have been treated differently," *id.* at 245, his allegations are too vague to nudge his complaint from the conceivable to plausible. *See Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010). At a minimum, it is not clear whether the inmates who were treated differently from Jackson were in fact similarly situated, as it is not clear whether those inmates also refused to complete the property inventory form on which Jackson wrote that he did not consent.

IV. **CONCLUSION**

For the foregoing reasons, the Court will dismiss Jackson's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will give Jackson an opportunity to file an amended complaint in the event he can state a plausible basis for a constitutional claim. An appropriate Order follows, which shall be docketed separately.

**BY THE COURT:**

**/s/ C. Darnell Jones, II**
_____
**C. DARNELL JONES, II, J.**